THE bill in this case is filed by the executors of Peter Blake against John Lowe to obtain an account and settlement. The principal facts in the case are as Iows. Peter X. Lafar had instituted a suit against John Lowe for malicious prosecution, and had obtained a ver-diet for 700 dollars. He entered up judgment and issued execution, under which John Lowe was committed to gaol. Lowe, before he was committed to gaol, had made out a schedule of his effects, which Lafar had examined and approved. Some time previous to this a levy had been made on the shop and jewelry, and a negro boy, of John Lowe, under another execution; and at the sale, Peter Blake, who was an intimate friend of » „ , , , , ,, , , Lowe, had bought them m at a very low rate. The goods were continued in the shop which Lowe had kept in Church street $ and though Blake was not a jeweller, the shop and its business went on in his name. To relieve John Lowe from gaol, Peter Blake gave his four several notes, each for $175, amounting to $700, endorsed by J. Darby to Lafar, who has since put them in suit and recovered the money, with costs, against Blake’s executors» Blake becoming sick, two deeds were prepared and executed on the 5th December, 1807. One was' an assignment by John Lowe to Peter Blake and John Darby of all the effects which had been comprised in the schedule abovementioned, in order to secure Blake against the effect of the notes he had given for the payment of Lowe’s debt on the judgment of La-far •, the overplus to be returned to him. No delivery took place of any thing mentioned in the assignment. The other deed was executed by Peter Blake. It was a donatio causa mortis, drawn with uncommon skill, of all the jewelry, shop furniture and the negro boy, which Blake had purchased at the sheriff’s sale as abovemen» *264 tioned, or rather of so much of the jewelry as remained unsold. Both these papers were executed in presence °f respectable witnesses. The donatio causa mortis re-^eri'e^ t° a possession actually previously given by Blake to Lowe of the effects contained in the deed. P. Blake also made a will, and left complainants executoi’s, and died on the 7th Dec-. 1807. Immediately on his decease Lowe took possession of every thing in the shop, and canied them off, with some notes, papers and books of the deceased. The first point in dispute related to the xiotes given by Blake for Lowe’s debt to Lafar, Upon this claim the Court cannot have the least doubt. It is a plain subsisting debt. Blake’s executors have been compelled to pay the amount of the execution with costs, by an execution, under which the negroes of Blake’s estate have been sold; and it is impossible to refuse the demand of the complainants for the reimbursement of that amount. Two objections were made however to this demand. First, that the assignment comprised many good debts, which might and ought to have been recovered by the assignees, and applied to the payment of this debt •, and that the laches of the assignees exonerated Lowe, especially as one of the debts assigned was due by Lafar himself, which ought to have been set off as far as it went against the debt due on the notes. It is impossible however to support this objection; for the witnesses who saw the assignment executed, saw no de-liveiy of the papers or effects, and no proof wras furnished that they ever were delivered. Blake lay extremely ill at the time, and died in two days ; and Darby, the other assignee, never acted under the assignment. There cannot therefore be any liability of the assignees for the articles assigned, which never came to their hands.
The other objection is, that Lafar would have compromised the judgment he held for g600, and that the executors had nearly cash enough in their hands of Blake to make this compromise, axxd ought to have done iL The plain answer to this objection is, that the exe- *265 eutors were not under any obligation to make this compromise. The exigencies of the estate of Blake might have required a different application of the cash he left. They ask no more than the sum paid for Lowe, on a me-ritofious and friendly assumption by Blake, to relieve Lowe front gaol, and they are entitled to Ml reimbursement with interest;
The next question relates to certain notes, which were' given by sundry persons to Blake, and which Lowe got into his hands at the time he took possession of the effects of Blake, immediately after his death. Against the claim of the executors for the re-delivery of thesé notes it was alleged, for the defendant, that though these notes, &c. were taken in the name of Blake, they were really Lowe’s property. Some evidence was given tending to shew, that during Lowe’s embarrassments Blake had acted as his friend, and endeavored to shelter his property and cover it with his name; and it was insisted that these notes grew out of some of those transactions. This was most strongly made out with respect to the note of W. Wright, given for some sugar, which lie bought from Blake, and gave his note to him; Blake is proved to have said to Mr. Brumirtoiid, that the sugars he placed' in his cellar were the property of fLowfe, Who was then in gaol. It is very possible, and even probable, that some of the transactions, for which the notes were given, were on Lowe’s account •, and the case of the note given for the sugar seems most probably to have been of that description. But it would be very dangerous to allow such evidence to be let in to alter the property, apparently of a deceased person. The debts are on the face of them due to Blake. Such claims founded on parol testimony, (though admissible evidence) would put in hazard the property of deceased persons, to the great injury of their heirs. And if Lowe suffers in these transactions it is by his oWn faulty conduct, in endeavoring to coyer his property from his creditors. If a man, to suit his own purposes, will allow his property to remain in the name of another person until that person *266 ¿ies, jie must make out bis claim by the clearest and most irrefragable testimony; and he must not rest on presumptions. Besidés, Lowe behaved very ill in get-these notes illegally into his hands, and striking out Blake’s name and inserting his own name.
The third ground of dispute is the claim of complainants to great part of the jewelry in the shop, of which Lowe possessed himself on the death of Blake. The executors do not contest the donatio causa mortis, which they acknowledge to be too clearly drawn and too well executed to admit of dispute, But they allege that a much greater quantity of jewelry was in the shop than ■was comprised in the dona tio causa mortis. The dona., tio causa mortis gives to John Lowe so much of the jewelry and silversmith’s goods as remain unsold of the jewelry purchased by Blake at the sheriff’s sale, and •the shop furniture and other working tools as the same was sold, remaining in the shop formerly occupied by Lowe. The city sheriff proved that Blake had purchased the negro hoy, jewelry, shop furniture, &c. at a nett ■sum of g212 ; hut that the boy alone was worth ¿500. And Blake at the sale said he purchased for Lowe, Dorsey, the shopman, swore that the jewelry in the shop at the death of Blake was worth between two and three thousand dollars ; as far as he could judge without an inventory, or particular examination ; but from his daily knowledge of the goods. It was contended for the complainants, that the quantity and value of jewelry in the shop being much greater than that purchased at the ■sheriff’s sale by Blake, which alone was given by the do-natio causa mortis, such surplus did not pass to Lowe j -that the shop was Blake’s, and such surplus was his estate. That if there was any difficulty in discriminating, ■it arose solely from the unjustifiable and illegal act of Lowe in taking possession of the whole shop and all its contents; and in taking the books of the shop and in cutting out the leaves, and so destroying the evidence Which would have thrown light on the case. That in ’■odio spoliatoris omnia presumuntur ; and that Lowe *267 should be made Hable to the utmost extent thatthe Court could do it.
There is no doubt that the conduct of Lowe was highly unjustifiable; and considerable indignation, is excit-. ed by his conduct ih this respect, as well as.in his taking the books and cutting out some' of theledves. But we must not permit our resentment against the acts of the spoiler to lead us to do injustice even to him.. . J
Executors of PeterBlafe Joto Lowe., , , *
There must be some ground to act upon in oiir presumptions. It is not certain that there was more'jewelry than Blake had purchased at the sheriff’s sale, añd comprised in the donatio causa mortis. The shop originally was Lowe’s.. All Ms jewelry was jiot sojd under the execution. The part sold was ’ at ’^É^r/low rate, and paid the debt,, and left a balance sheriff’s hands. What Blake bought was camelrplack to the-shop. Blake was not a jeweller ; there is no proof that he ever bought any other jewelry, or ever dealt in that way. It appears that the system of covering the property of Lowe was carried, on in the shop.. What was bought in was at so very low a rate, that there is no forming any judgment of the real value of'it. The value put upon the goods in the shop at Blake’s death, by the shopman, was a mere guess. He had no inventory $ no prices; his eye alone guided him..' He might be greatly-mistaken.
I do not think there is any strong ground to believe there was any more jewelry in the shop than Blake had bought at the sale, except that part of the stock of Lowe which was not sold.. If I had any reasonable doubts on. this subject, I should have great difficulties how to discriminate. In that case I should presume much, against him,, if that presumption would lead to any fair and certain conclusion. But I confess I have not much doubt. I cannot therefore, because a man has behaved very ill in getting possession irregularly of the goods, make him liable beyond what I really believe him to be,, as a punishment of his injustice.
There is one thing, however, I must remark» The *268 Case ^ie defendant was attempted to be strengthened, respect to the funds said to be furnished by Lowe to Blake, by shewing some entries in one of the mutilated books. But l enter my solemn protest against any use being made, in favor of Lowe, of books which he got possession of surreptitiously and illegally, and which are found mutilated in his hands, It would be monstrous to allow him to derive the smallest aid from such books.
It is therefore ordered and decreed, that the defendant, John Lowe, do pay and satisfy unto the complainants the sum of nine hundred and twenty-six dollars, 40 cents, being the amount of the principal and interest of the notes drawn by Peter Blake and endorsed by John Darby to Peter Xavier Lafar, and of the costs and charges paid to the sheriff of Charleston district from the proceeds of the sales of the negroes of the estate of the said Peter Blake, sold on the execution at the suit of the said Peter X, Lafar against the executors of the said Peter Blake. Also, the interest arising on the said sum of $926 40 cents, from the 1st September, 1806, the time when the said sum was received by the sheriff. Also, the sum of fortyrsix dollars, 31 cents, which was paid, as per receipt, by the said Peter Blake to the gaoler of Charleston district, for the said John Lowe on his liberation from gaol, with interest thereon from the 6th November, 1808, the date of the said receipt. Also, that John Lowe, the defendant, or the attorney or attor-nies in whose hands the promissory notes, or other chases in action, may be, which were payable to Peter Blake and upon Ms death fell into the hands of the said John Lowe, do deliver the same or such of them as ate unpaid unto the said executors, as belonging to the estate of the said John Blake, that is to say, John Strobb’s note for $58 ; Thomas Wright’s note for $259 60 cents ; Daniel Ward’s order in favor of Peter Blake, and by him accepted, for $106 96 cents ; William Muir’s due-bill for $32 ; and in case any monies be received on account of them, or any of them, by the said John Lowe, qv the attorney or attornies, they do account with and *269 pay over the same unto the said executors $ and that the defendant do pay the costs of suit.